**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ROSHEN USA CORP., ROSHEN USA LLC,
and KONDITERSKA KORPORATZIA
"ROSHEN",

        *Plaintiffs*,

    - against -

ROYAL SWEET BAKERY, INC. and
MIKHAIL YUSIM and JOHN DOE 1-10

        *Defendants*.

Civil Action No.:

**COMPLAINT AND JURY
DEMAND**

   Plaintiffs, Roshen USA Corp. ("Roshen USA"), Roshen USA LLC (Roshen USA and

Roshen USA LLC are collectively referred herein as "Roshen USA"); Konditerska Korporatzia

"ROSHEN" ("Roshen") (hereinafter collectively, "Plaintiffs") bring this action against the

defendants, Royal Sweet Bakery, Inc. ("Royal Sweet"), Mikhail Yusim ("Yusim"), and John

Doe 1-10 (Royal Sweet, Yusim and John Doe 1-10 are hereinafter collectively referred to as

"Defendants"), and allege as follows:

<u>**NATURE OF THE ACTION**</u>

   1.  This is an action for trademark infringement, fraud, unfair competition, and other

illegal and wrongful acts brought against Defendants who have imported into the United States,

with an intent to distribute, and are currently distributing, certain diverted "grey market"

confectionary goods that are illegal to sell in the United States.

   2.  The illegal and wrongful acts by Defendants are directed at a major manufacturer

of confectionary goods that exports its product to the United States from Ukraine, and its

exclusive distributor in the United States.  Most troubling, Defendants' acts harm the consumers

who mistakenly believe that they purchase the highest quality products that they associate with the well-known brand when they, in fact, are buying materially different products through unapproved distribution channels.

3.      Roshen is one of the world's largest manufacturers of confectionary goods, headquartered in Kiev, Ukraine.  It manufactures over 320 varieties of confectionary goods, including chocolate and jelly sweets, caramel, chocolate, biscuits, waffles, and cakes.  Roshen's goods are sold worldwide, including in the United States.

4.      Roshen has registered some of its trademarks in the United States.  These valid trademarks appear on the products that are imported into the United States.

5.      The products that Roshen sells in the United States are manufactured exclusively in Ukraine.  However, Roshen owns and operates a factory that is located in the Central Federal District in Russia, in the town of Lipetsk.

6.      The only products that are intended for export to the United States are produced at the Roshen's factories in Ukraine.  The products that are produced at the Lipetsk factory are intended only for domestic consumption in Russia.

7.      Roshen products are distributed in the United States exclusively by and through Roshen USA.

8.      Over many years of cooperation with Roshen, Roshen USA has developed a reputation among consumers as a reliable, responsible distributor who can be trusted to adhere to the highest standards in product handling and quality control.  Through close cooperation with Roshen, Roshen USA has carefully cultivated this relationship for many years.  Roshen and Roshen USA's reputation is presently in danger of being destroyed by the named Defendants,

John Does, and their principal who are attempting to import and distribute products that will likely cause consumer confusion and harm the goodwill of Roshen and Roshen USA.

9. Defendants have obtained Roshen products from sources in Russia that are outside the only distribution channel approved by Roshen. Roshen and Roshen USA take great care to ensure that the Ukrainian-made Roshen products are shipped to the United States under certain conditions designed to maintain their quality and integrity. With diverted Roshen products, like the ones sold by Defendants, Roshen has no assurances that such products are being handled and stored under safe conditions. Defendants are attempting to flood the United States market with products that are not intended for distribution in the United States, that have been warehoused in facilities not approved by the FDA, and that have not been transported to the United States under acceptable temperature- and humidity-controlled conditions.

10. As will be further alleged in this Complaint, Roshen products that were manufactured in Ukraine and are intended for export to the United States are materially different from those produced in Russia and intended for distribution in Russia but diverted to the United States – the so-called "grey market" Roshen products.

11. Defendants' unauthorized importation and subsequent distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Roshen, Roshen USA, as well as consumers. As a result of Plaintiffs' extensive branding, marketing, sales, and quality control efforts in the United States and around the world, consumers in the United States expect a certain quality, packaging, and overall image from Roshen-branded products. When such consumers encounter the diverted products, which bear certain of Roshen's trademarks but are materially different from what U.S. consumers expect, they are likely to be confused.

12.     Defendants' importation and sales of diverted products cause great damage to Roshen and its valuable trademarks.

## PARTIES

13.     Plaintiff Roshen is a private joint stock company organized and existing pursuant to the laws of Ukraine, with its principal place of business in Kiev, Ukraine.  Roshen is engaged in the business of manufacturing and marketing confectionary products.

14.     Plaintiff Roshen USA is a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business in Cranbury, New Jersey.  Roshen USA is the exclusive importer of Roshen products into the United States and Canada.

15.     Plaintiff Roshen USA LLC is a limited liability company organized and existing pursuant to the laws of the State of New Jersey, with its principal place of business in Cranbury, New Jersey.  Roshen USA is the exclusive distributor of Roshen products in the United States and Canada.  It markets, sells and distributes Roshen products throughout the United States and Canada.  Roshen USA supplies all Roshen products that it imports to Roshen USA LLC.

16.     Defendant Royal Sweet is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  Royal Sweet is engaged in the business of, among other things, importing, selling, marketing and distributing confectionary products in the United States.

17.     Defendant Yusim, upon information and belief, owns and operates Royal Sweet.  Upon information and belief, Yusim resides in Brooklyn, New York, with a principal place of business at 119 49th Street, Brooklyn, New York 11232.  Defendant Yusim exercises control over Royal Sweet and is a moving, conscious, active force behind Royal Sweet's unlawful conduct.

18.     Defendants John Doe 1-10 are other persons and entities that are involved in the scheme to import, distribute, and sell diverted Roshen products but whose identities are presently unknown.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over this action under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367; and general principles of ancillary and pendent jurisdiction.

20.     The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

21.     The Court has personal jurisdiction over the Defendants because they regularly transact or have transacted business in the Eastern District of New York by, for example, selling diverted Roshen goods into the state of New York to consumers in the State of New York.

22.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and one or more of the Defendants is subject to personal jurisdiction in this district.

## FACTS

**Roshen and Roshen USA**

*A.      Roshen and Roshen USA's Business*

23.     Roshen is one of the world's largest manufacturers of confectionary goods.  It is headquartered in Kiev, Ukraine.

24.     Roshen manufactures over 320 varieties of confectionary goods, including chocolate and jelly sweets, caramel, chocolate, biscuits, waffles, and cakes.

25.    Roshen exports its goods to numerous countries, including the United States.

26.    Roshen enjoys a worldwide reputation for quality, taste characteristics and attractiveness of their product design.  It enjoys a particularly strong reputation in the United States among immigrants from the former Soviet Union and Eastern European countries. Roshen develops, manufactures, and markets products that are familiar to these immigrants by catering to their specific preferences and tastes.

27.    Roshen uses only the highest-quality, natural ingredients and produces confectionary goods of exceptional quality.  Roshen products stand apart from other confectionary goods manufacturers in the post-Soviet space because of Roshen's adherence to world-class quality standards that Roshen achieves through the use of the most modern equipment and highest-quality ingredients.

28.    Roshen products are often the number one choice among consumers shopping for confectionary goods in ethnic stores in the United States.  Consumers know that when they choose Roshen-branded products, they can be assured they are buying the highest-quality candies, cakes, chocolate and other sweets.

29.    Many of Roshen products have become so popular among consumers that particular types of candies are firmly associated with Roshen's proprietary names for these products, *i.e.*, "Шалена бджілка" ("Crazy Bee") jelly-filled candies, "Київський" cake ("Kiev Cake"), to name a few.

30.    Roshen's tremendous success in the United States has become possible in large part because of Roshen USA's relentless efforts in promoting Roshen products in the United States.

31.     Roshen USA has, since its creation in 2010, been the exclusive importer of Roshen products into the United States and Canada.  Roshen USA distributes over 950 tons of Roshen goods every year in the United States alone.

32.     Roshen USA works closely with Roshen to develop the best ways to market Roshen products in the United States.  It is instrumental in Roshen's efforts to select, package and present Roshen products for the United States market.

33.     Roshen USA has spent considerable efforts and made enormous investments of time and money in promoting Roshen products in the United States.  Roshen USA routinely studies the tastes of United States' consumers and works with Roshen to tailor their products accordingly, participates in numerous exhibitions, presentations, sample sales, develops, together with Roshen, marketing materials, cultivates relationships with local stores and their proprietors, and advertising Roshen products on radio, television, in print and elsewhere.  Roshen USA has devoted all its attention to ensure that Roshen products are consistently number-one sellers among similarly-situated products.

34.     Roshen USA is in charge of shipping and importing Roshen products into the United States, storage of the products at Roshen USA's warehouse, and transporting them to hundreds of stores that sell them.  In doing so, Roshen USA adheres to the highest standards developed by Roshen that ensure that the products are not exposed to extreme heat and humidity, that they are not past their expiration date, and are safe for consumers.  Roshen USA ensures that Roshen products comply with all applicable laws and regulations applicable to food products of this type.

35.     Roshen USA handles customer relationships for Roshen in the United States. Roshen USA ensures the effectiveness of recalls of Roshen products, answers customer

questions and addresses their concerns, accepts suggestions from customers and transmits them to Roshen, and replaces products for consumers in the rare instances when products do not meet their expectations.

36.     Roshen USA ensures compliance with the U.S. Food and Drug Administration ("FDA") labeling and Prior Notice requirements with respect to Roshen products.  It works with Roshen to ensure that the label properly and conspicuously lists all required information, and that the FDA is duly advised prior to the importation of Roshen products into the United States.

37.     In sum, the sale of Roshen products in the United States has been tremendously successful due to Roshen and Roshen USA's marketing and promotion of the Roshen brand throughout the country.

### B.     *Roshen's Trademarks*

38.     Roshen is the owner of several of U.S. Trademarks including, among others, the following (collectively referred to as "Roshen Marks"):

a.     Roshen's  trademark was registered on the Principal Register of the United States Patent and Trademark Office on September 30, 2014, as U.S. Registration Number 4,611,970.  A copy of Roshen's Registration Certificate Number 4,611,970 is attached hereto as part of **Exhibit "A"**.

b.     Roshen's trademark was registered on the Principal Register of the United States Patent and Trademark Office on August 24,

2010, as U.S. Registration Number 3,838,123.  A copy of Roshen's

Registration Certificate Number 3,838,123 is attached hereto as part of

**Exhibit "A"**.

    c.   Roshen's **Crazy Bee** trademark was registered on the Principal

Register of the United States Patent and Trademark Office on December 20,

2011, as U.S. Registration Number 4,072,600.  A copy of Roshen's

Registration Certificate Number 4,072,600 is attached hereto as part of

**Exhibit "A"**.



    d.   Roshen's       trademark was registered on the Principal Register of

the United States Patent and Trademark Office on April 21, 2015 as U.S.

Registration Number 4,722,062.  A copy of Roshen's Registration Certificate

Number 4,722,062 is attached hereto as part of **Exhibit "A"**.

    39.    There are several other applications for U.S. trademark registration that are

currently pending before the United States Patent and Trademark Office, including:

  (Serial Number 79173434);                (Serial Number

79152260); as well as others.

40.     Roshen has also registered numerous trademarks worldwide.

41.     The Roshen brand is recognized in the United States and throughout the world as

associated with high-quality confectionary goods made with ecologically pure ingredients.

Roshen goods are sold in grocery stores throughout the United States.

42.     As a result of Roshen and Roshen USA's extensive advertising and promotion of

Roshen goods in connection with the Roshen Marks, Roshen's widespread and long-running sale

of Roshen goods, and the celebrity that the Roshen Marks have achieved, confectionary goods

bearing Roshen Marks have been and are now recognized by the consuming public in the United

States and in the trade as originating from a single source: Roshen.

43.     Confectionary goods bearing the Roshen Marks have come to be known by the

purchasing public throughout the United States and abroad as confectionary goods of the highest

quality. As a result, the Roshen Marks and the goodwill associated with them are of inestimable

value to Roshen.

44.     Roshen has used and is currently using the Roshen Marks in commerce and in

connection with its sale of Roshen's confectionary goods, and plans to continue such use in the

future.

### C.     *Defendants Imported Grey Market Roshen Products*

45.     In or around late October 2015, Defendants imported into the United States a large quantity of "grey market" Roshen products.

46.     Upon information and belief, Defendants had purchased certain Roshen products manufactured in Russia from one or more distributors in Russia.  Defendants are now offering these products for sale in the United States and are actively marketing these products.

47.     The Roshen products that Defendants have purchased were not authorized by Roshen to be exported into the United States.

48.     The factory where the products were produced is not authorized by the FDA. Upon information and belief, the distributors, from which Defendants purchased these products, were not authorized by the FDA.

49.     Defendants created and placed a nutritional and packaging label on the diverted products without Roshen's consent and in violation of the FDA rules and regulations.

50.     As will be demonstrated below, the diverted Roshen products and Ukrainian-made Roshen products authorized for sale in the United States are materially different.

### D.     *Material Differences Between U.S. and Diverted Roshen Products*

51.     The Roshen goods destined for the United States and those intended to be sold in other countries are materially different in terms of packaging, labeling, and quality control measures applicable to such products.

52.     **Place of Manufacture**.  The first critical difference between the Ukrainian-made Roshen products intended for export into the United States and those that have been diverted by Defendants is that the authorized Roshen products are manufactured at factories in Ukraine and

bear the legend "Product of Ukraine," whereas those diverted Roshen products are manufactured in Russia and bear the legend "Product of Russia."

53.    The difference in the country of manufacture is extremely important to many United States consumers.  Consumers associate the country of origin with certain sentiments about the quality of the product.  Roshen is the brand that is associated with the best that Ukraine has to offer.

54.    **Ukrainian-Made Roshen Products Are Produced, Stored and Handled at FDA-Approved Facilities; Diverted Products Were Not.**  Under provisions of the U.S. law contained in the U.S. Federal Food, Drug and Cosmetic Act, importers of food products intended for introduction into U.S. interstate commerce are responsible for ensuring that the products are safe, sanitary, and labeled according to U.S. requirements.  All imported food is considered to be interstate commerce.

55.    FDA is not authorized under the law to approve, certify, license, or otherwise sanction individual food importers, products, labels, or shipments. Importers can import foods into the United States without prior sanction by FDA, as long as the facilities that produce, store, or otherwise handle the products are registered with FDA, and prior notice of incoming shipments is provided to FDA.

56.    The facility that produces Roshen products in Russia, namely, the Lipetsk Confectionary Factory, is not, and have never been, registered with FDA.

57.    Roshen products that were manufactured in Russia were never intended for export to the United States.  Rather, they are intended for domestic consumption in Russia.

58.    Roshen has never authorized the Russian factories to sell product to anyone for export into the United States.  Defendants, nevertheless, have subverted these safeguards.

59.     Moreover, upon information and belief, Defendants did not purchase Roshen products directly from Roshen factories in Russia.  Rather, they purchased them from other wholesalers in Russia.  Upon information and belief, these wholesalers, which stored and handled Roshen products, have never been registered with FDA.

60.     **Package and Nutritional Labeling**.  The diverted products imported by Defendants are mislabeled in violation of FDA regulations.

61.     By way of example, the proper label that appears on one of Ukrainian-made Roshen's product, "Citrus Mix, Hard Candies," is as follows:



62.     The nutritional label that is reproduced here was developed in cooperation between Roshen and Roshen USA and complies in all respects with FDA requirements.

63.     Similar labels appear on all Roshen products imported into the United States.

64.     The correct label contains accurate nutritional facts, lists all ingredients of the product, identifies the manufacturer ("Roshen" Ukraine), identifies the distributor in the United States ("Roshen USA"), identifies the expiration date (as stated on the packaging), and identifies how the product is to be stored.

65.     The nutritional label that is found on the diverted Roshen products is reproduced here:



66.     The label reproduced here is clearly materially different from the one on the

U.S.-destined Roshen products in several respects.

67.     First, the label indicates that the recommended serving size of the product is 100g

while the Ukrainian-made Roshen label indicates the recommended serving size of 13g – an

almost eight times difference.

68.     Second, the label does not indicate the manufacturer of the product, listing only

the distributor.  Moreover, the distributor's name is not listed as a full corporate name, in

violation of FDA requirements.

69.     Third, the label does not indicate the production and expiration date or conditions

of storage.

70.     Fourth, the overall design of the nutritional label does not comply with FDA

requirements and omits critical information, such as different nutritional values based on

different caloric intake diets, as required by 21 CFR 101.9(d).

71.     Finally, the listing of ingredients on the label of diverted products is in clear violation of FDA requirements.  Statements such as "flavor", "colorings," and "stabilizer" without further specificity are not permitted on nutritional labels by FDA regulations.

72.     **Diverted Products Are Not Kosher**.  Another critical difference between the Ukrainian-made products destined for distribution in the United States and those diverted by Defendants is that the Ukrainian-made products are kosher while the diverted products are not.

73.     The kosher status of Ukrainian-made Roshen products is essential to many consumers who are observant Jews.  By way of example, while many confectionary goods that are not kosher contain pig-derived gelatin, Roshen's products do not.

74.     Roshen and Roshen USA supply stores that sell Ukrainian-made Roshen products with Kosher certificates for inspection by consumers.  Many consumers who purchase Roshen products may check the status of the kosher certificate once and then rely on the reputation of the stores that sell Ukrainian-made Roshen products to maintain the kosher status in the future when they return to purchase the same products.  Because Ukrainian-made Roshen products and those manufactured in Russia and diverted to the United States by Defendants are so similar, many consumers are confused as to the kosher status of the products.  They would have no reason to doubt the kosher status when buying diverted products and would be tricked into thinking that they are buying kosher products when they, in fact, are not.

75.     Moreover, the sale of non-kosher products at kosher stores damages the reputation and kosher status of the stores that sell them.

76.     **There Are Quality Control Differences**.  Roshen products that are manufactured in Russia have been subjected to different quality control measures while in transit to the United States.  While Roshen USA transports the products under carefully controlled temperature and

humidity conditions, Defendants, upon information and belief, have not done so.  Moreover, the diverted products have passed through unapproved warehouses that have not been inspected by the FDA, and, as such, Roshen cannot guarantee the quality control measures applied during the transportation of diverted products.

77.     Additionally, as alleged above, there exists a consumer feedback mechanism involving Roshen and Roshen USA.  In the unlikely event that there might arise a need for recall of certain products, Roshen can transmit the recall request to Roshen USA, which will in turn assure compliance with the recall.  Conversely, should a consumer identify a problem with a Roshen product, Roshen USA can transmit this information to Roshen for correction.

78.     When products are imported in the United States through unapproved channels, there cannot be effective recalls.  Moreover, there cannot be any feedback from consumers to Roshen since Roshen does not, and cannot, deal with Defendants directly.

79.     The breakdown in the quality control scheme that has been carefully built by Roshen and Roshen USA will harm the Roshen brand and adversely affect the goodwill of Roshen and Roshen USA.

80.     Therefore, Defendants have and continue to mislead and confuse consumers by attempting to pass diverted Roshen products as Ukrainian-made and in doing so continue to cause irreparable and monetary harm to Roshen and Roshen USA.

81.     **Ukrainian-Made Roshen Products Are Labeled in Ukrainian While Diverted Products Are Labeled in Russian**.   The packaging of many Roshen products is principally in Ukrainian, whereas Roshen products manufactured in Russia are primarily labeled in Russian. The packaging language is critical to many consumers who may be confused as to why the quintessential Ukrainian company, Roshen, uses Russian language in marking its products.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement
### 15 U.S.C. §1114(1) (Lanham Act Section 32)

82.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

83.     Roshen is the owner of all right, title and, interest in and to the Roshen Marks (as set forth above).

84.     Defendants, without authorization, have imported into the United States, and/or distributed and/or sold in the United States, and/or received in interstate commerce, diverted Roshen goods featuring the Roshen Marks, which products are materially different from the Roshen goods authorized by Roshen for sale in the United States. Such actions are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the diverted Roshen goods in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe Roshen authorizes and controls the sale of Defendants' diverted Roshen goods, or that Defendants are associated with or related to Roshen or are authorized by Roshen to sell Roshen products in the United States.

85.     Defendants' acts have injured or are likely to injure Roshen's image and reputation with consumers in this judicial district and elsewhere in the United States by creating confusion about, and/or dissatisfaction with, Roshen products.

86.     Defendants' acts have injured or are likely to injure Roshen's reputation in this judicial district and elsewhere in the United States by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Roshen Marks, and a loss of sales and/or market share to Roshen's competition.

87.     Defendants' acts have been committed deliberately and willfully knowledge of Roshen's exclusive rights and goodwill in the Roshen's Marks, and with knowledge of the

infringing nature of the marks when used in connection with the diverted Roshen goods. Defendants' acts have also been committed with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

88.     As a result of Defendants' trademark infringement, Roshen has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Roshen Marks, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

89.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of infringement.

90.     As the acts alleged herein constitute infringement of the Roshen Marks under 15 U.S.C. § 1114(1), and as Roshen has no adequate remedy at law, Roshen is entitled to injunctive relief as well as to Defendants' profits, Roshen's damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition and False Advertisement
### 15  U.S.C. § 1125(a)(1)(A) and (a)(1)(B) (Lanham Act Section 43(a))

91.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

92.     Defendants have, without authorization, imported into the United States

and/or distributed and/or sold in the United States and/or received in interstate commerce, diverted Roshen goods featuring the Roshen Marks, which products are materially different from the Roshen goods authorized by Roshen for sale in the United States.  Such use is likely to cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Roshen, and as to the origin, sponsorship or approval by Roshen of Defendants' diverted Roshen goods and the commercial activities related to Defendants' diverted Roshen goods.

93.     Defendants' acts constitute a false representation and a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

94.     Defendants have similarly violated 15 U.S.C. 1125(a)(1)(B) in that their activities in connection with importing and distributing diverted Roshen goods misrepresents the nature, characteristics, qualities, and/or geographic origin of their goods, services, or commercial activities.

95.     Defendants' acts have been committed with knowledge of Roshen and Roshen USA's exclusive common law rights and goodwill in the Roshen Marks, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

96.     Roshen and Roshen USA have suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to their rights in and to the Roshen Marks and to the goodwill associated therewith for which Roshen and Roshen USA have no adequate remedy at law.

97.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of infringement.

98.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), and as Roshen and Roshen USA have no adequate remedy at law, Roshen and Roshen

USA are entitled to injunctive relief and to Defendants' profits, Roshen and Roshen USA's

damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable

attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF

**Common Law Unfair Competition**
**(By Roshen and Roshen USA Against all Defendants)**

99.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

100.    Defendants' acts constitute an infringement of Roshen's and Roshen USA's

trademark rights in violation of common law, including the common law of the State of New

York and elsewhere.

101.    As a result of Defendants' acts, Roshen and Roshen USA have suffered and, if

Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and

damage to their rights in and to the Roshen Marks, and to the goodwill associated therewith for

which Roshen and Roshen USA have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

**Federal Trademark Dilution**
**15 U.S.C. § 1125(c) (Lanham Act Section 43(c))**

102.    Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

103.    Roshen Marks are famous and distinctive within the meaning of 15 U.S.C. §

1125(c).

104.    Roshen Marks are widely recognized by the general consuming public of the

United States as a designation of source of Roshen's goods, as distributed by Roshen USA.

105.    Since the Roshen Marks have become famous, Defendants have utilized marks that are likely to cause dilution by blurring and/or tarnishment of Roshen's famous Roshen Marks.

106.    Defendants' acts greatly and irreparably damage Roshen and Roshen USA and will continue to do so unless restrained by this Court. Therefore, Roshen and Roshen USA are without an adequate remedy at law and are entitled to, among other things, an order enjoining and restraining Defendants from selling diverted Roshen goods.

## FIFTH CLAIM FOR RELIEF

### State Law Trademark Dilution

107.    Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

108.    Roshen's Marks are distinctive under state law, including New York General Business Law § 360-l.

109.    Defendants' acts are likely to cause dilution by blurring and/or tarnishment, and damage the business reputation of Roshen and Roshen USA in violation of state law, including New York General Business Law § 360-l.

110.    Through their acts, Defendants have injured and are continuing to injure Roshen and Roshen USA's business reputation and/or have diluted and are continuing to dilute the distinctive quality of the Roshen Marks, in violation of state law, including New York General Business Law § 360-l.

111.    Defendants' acts greatly and irreparably damage Roshen and Roshen USA and will continue to do so unless restrained by this Court. Therefore, Roshen and Roshen USA are without an adequate remedy at law and are entitled to, among other things, an order enjoining and restraining Defendants from selling diverted Roshen goods.

## SIXTH CLAIM FOR RELIEF

### State Law Deceptive Business Practices

112.    Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

113.    Defendants' acts were consumer-oriented.

114.    Defendants' acts were materially misleading.

115.    Defendants' acts have caused and are continuing to cause injury to Roshen and Roshen USA in violation of state law, including New York General Business Law § 349.

116.    Defendants' acts greatly and irreparably damage Roshen and Roshen USA and will continue to do so unless restrained by this Court. Therefore, Roshen and Roshen USA are without an adequate remedy at law and are entitled to, among other things, an order enjoining and restraining Defendants from selling diverted Roshen products.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

117.    Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

118.    The Defendants made false representations and material omissions in connection with their sales of diverted Roshen products bearing Roshen Marks.

119.    As a result of these false representations and material omissions, Defendants wrongfully obtained a monetary benefit to which they were not legally entitled.

120.    Defendant benefitted as a result of the profits the Defendants reaped as a result of the diversion scheme.

121.    Defendants have no right to retain these unjust gains.

122.    If Defendants are permitted to keep this monetary benefit, it would be manifestly unjust.

123.    By selling diverted Roshen products, in the United States, Defendants have been unjustly enriched at Roshen and Roshen USA's expense in violation of the common law of New York and elsewhere.

## EIGHTH CLAIM FOR RELIEF

### Importation of Goods Bearing Infringing Marks
### 15 U.S.C. § 1124

124.    Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

125.    By illegally importing diverted Roshen products from foreign countries with the intent of consumers into believing that the products are authorized for resale in the United States, Defendants have violated 15 U.S.C. § 1124.

126.    Plaintiffs have been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited thereby and, unless their conduct is enjoined, Plaintiffs' reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116.

### PRAYER FOR RELIEF

**WHEREFORE**, Roshen and Roshen USA demand judgment against all Defendants as follows:

(a) an order entering judgment in favor of Plaintiffs against Defendants, jointly and severally;

(b) an order temporarily restraining, and preliminarily and permanently enjoining Defendants from engaging in the unlawful behavior described above;

(c) an order awarding Plaintiffs damages in an amount to be determined;

(d) an order awarding Plaintiffs trebling of damages;

(e) an order awarding Plaintiffs pre-judgment and post-judgment interest;

(f) an order awarding Plaintiffs punitive damages;

(g) an order awarding Plaintiffs reasonable attorneys' fees and other costs; and

(h) for such additional relief as the Court finds just, equitable, and appropriate.


**JURY DEMAND**

Plaintiffs hereby request a jury trial on all claims and issues asserted in the Complaint.


Dated: New York, New York
       December 16, 2015


                              Yours, etc.
                              SAUCHIK & GIYAUR, P.C.

                      By:  /s/ _____
                           Alec Sauchik (AS-5002)
                           *Attorneys for Plaintiffs,*
                           *Roshen and Roshen USA*
                           17 Battery Place, Suite 305
                           New York, New York 10004
                           (212) 668-0200
                           asauchik@mdrxlaw.com